1  SANFORD JAY ROSEN – 062566
   MARK R. FEESER – 252968
2  ROSEN, BIEN & GALVAN, LLP
   315 Montgomery Street, 10th Floor
3  San Francisco, California  94104-1823
   Telephone:  (415) 433-6830
4  Facsimile:  (415) 433-7104
   Email:       srosen@rbg-law.com
5              mfeeser@rbg-law.com

6  Attorneys for Plaintiff PETER KNOWLES

7

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  PETER KNOWLES,                          Case No.

12              Plaintiff,                  **COMPLAINT FOR VIOLATION OF CIVIL RIGHTS**

13       v.                                 **JURY TRIAL DEMANDED**

14  CITY OF BENICIA, Police Chief SANDRA
    SPAGNOLI, City Manager JIM ERICKSON,
15  Sergeant FRANK HARTIG, Sergeant BOB
    OETTINGER, Sergeant CHRIS BIDOU,
16  Sergeant SCOTT PRZEKURAT, Officer JOHN
    McFADDEN, Officer MARK MENESINI,
17  Officer JAMES LAUGHTER, Officer KEVIN
    ROSE, Officer JASON EAKIN, Officer, TED
18  CRIADO, Officer JAKE HEINEMEYER, and
    DOES I through XXX, inclusive,
19
                Defendants.
20

21

22

23

24

25

26

27

28

[310380-7]

**INTRODUCTION**

Between December 2007 and May 2008, members of the Benicia Police Department repeatedly harassed Plaintiff PETER KNOWLES, in violation of his rights under the First, Fourth, and Fourteenth Amendments to the Constitution of the United States.  On three separate occasions, Benicia Police Department officers unlawfully entered and searched Plaintiff's private residence, without a warrant or exigent circumstances, twice arresting Plaintiff.

On December 23, 2007, Defendants entered Plaintiff's private residence without a warrant, and lacking exigent circumstances justifying a warrantless intrusion, and arrested him for driving under the influence.  The Appellate Division of the Superior Court of Solano decided that Benicia Police Department officers had violated Plaintiff's Fourth Amendment rights and reversed the criminal conviction against Plaintiff.

On April 30, 2008, in the middle of the night and without probable cause or a warrant, Benicia Police Department officers stormed the docked boat Plaintiff was living on.  The officers kicked in a locked door, pointed their weapons at Plaintiff, and yelled "shoot him," before retreating into the night without any formal arrest or charges being made.  On May 30, 2008, Defendants once again searched Plaintiff's residence without a warrant and then affected a warrantless arrest inside his residence.  In addition to these events, following the December 23, 2007 incident, Plaintiff routinely was followed and stopped by Benicia Police Department officers whether in a car or on foot, and on multiple occasions threatened and told to leave town.

As a result of this harassment, and fearing for his life, Plaintiff was forced to move out of the City of Benicia, where he was employed as Harbor Master of the Benicia Marina and which was adjacent to the California Maritime Academy, where Plaintiff was a student.  The harassment has caused Plaintiff to suffer from physical injuries and emotional distress including post-traumatic stress disorder, to incurred substantial legal fees to defend against criminal charges, and to suffer additional pecuniary loss including legal fees and the negative impact that the arrests, none of which have led to convictions, have had on his ability to secure employment in his field of study, maritime and port security.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS - CASE NO.

[310380-7]

**JURISDICTION AND VENUE**

1.     This action is brought pursuant to 42 U.S.C. § 1983 for violations of the First, Fourth, and Fourteenth Amendments to the United States Constitution.  The court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343.

2.     The claims alleged herein arose in the City of Benicia, County of Solano, California.  Therefore, venue in the Eastern District of California and is proper pursuant to 28 U.S.C. § 1391(b)(2).

**PARTIES**

3.     Plaintiff PETER KNOWLES is a citizen of the United States, and a resident of the City of Sacramento, County of Sacramento, and State of California.  PETER KNOWLES is presently a free person and brings this action on his own behalf.

4.     Defendant CITY OF BENICIA is a public entity, duly organized and existing under the laws of the State of California.  Under its authority, Defendant CITY OF BENICIA operates the Benicia Police Department.

5.     Defendant Police Chief SANDRA SPAGNOLI was at all times relevant hereto, the Chief of the Benicia Police Department.  As such, she is the responsible party for supervising the training, instruction, discipline, control and conduct of Defendant police officers.  She is also charged with promulgating all orders, rules, instructions and regulations of the Benicia Police Department including but not limited to those orders, rules, instructions and regulations concerning the authority to conduct warrantless searches and arrests.  Defendant SPAGNOLI is sued in her official and individual capacities.

6.     Defendant City Manager JIM ERICKSON was at all times relevant hereto, the City Manager for the City of Benicia.  As such he is responsible for supervising and informing the City of Benicia Police Chief.  Defendant ERICKSON is sued in his official and individual capacities.

7.     Defendant FRANK HARTIG was a Sergeant in the Benicia Police Department at all times relevant hereto.  In committing the acts and omissions alleged herein, Defendant HARTIG was acting under color of state law and within the course and scope of his employment

2

[310380-7]

as a sergeant in the Benicia Police Department.  As a sergeant, Defendant HARTIG was an official with final policy-making authority regarding the supervision, discipline, training and equipping of officers for the Benicia Police Department.  Defendant HARTIG is sued in his official and individual capacities.

8.     Defendant BOB OETTINGER was a Sergeant in the Benicia Police Department at all times relevant hereto.  In committing the acts and omissions alleged herein, Defendant OETTINGER was acting under color of state law and within the course and scope of his employment as a sergeant in the Benicia Police Department.  As a sergeant, Defendant OETTINGER was an official with final policy-making authority regarding the supervision, discipline, and training of officers for the Benicia Police Department.  Defendant OETTINGER is sued in his official and individual capacities.

9.     Defendant JAMES LAUGHTER was an officer in the Benicia Police Department at all time relevant hereto.  In committing the acts and omissions alleged herein, Defendant LAUGHTER was acting under color of state law and within the course and scope of his employment as an officer in the Benicia Police Department.  Defendant LAUGHTER is sued in his official and individual capacities.

10.    Defendant CHRIS BIDOU was an officer in the Benicia Police Department at all time relevant hereto.  In committing the acts and omissions alleged herein, Defendant BIDOU was acting under color of state law and within the course and scope of his employment as an officer in the Benicia Police Department.  Defendant BIDOU is sued in his official and individual capacities.

11.    Defendant JOHN MCFADDEN was an officer in the Benicia Police Department at all time relevant hereto.  In committing the acts and omissions alleged herein, Defendant MCFADDEN was acting under color of state law and within the course and scope of his employment as an officer in the Benicia Police Department.  Defendant MCFADDEN is sued in his official and individual capacities.

12.    Defendant MARK MENESINI was an officer in the Benicia Police Department at all time relevant hereto.  In committing the acts and omissions alleged herein, Defendant

1    MENESINI was acting under color of state law and within the course and scope of his

2    employment as an officer in the Benicia Police Department.  Defendant MENESINI is sued in

3    his official and individual capacities.

4         13.    Defendant KEVIN ROSE was an officer in the Benicia Police Department at all

5    times relevant hereto.  In committing the acts and omissions alleged herein, Defendant ROSE

6    was acting under color of state law and within the course and scope of his employment as an

7    officer in the Benicia Police Department.  Defendant ROSE is sued in his official and individual

8    capacities.

9         14.    Defendant SCOTT PRZEKURAT was a Sergeant in the Benicia Police Department

10   at all time relevant hereto.  In committing the acts and omissions alleged herein, Defendant

11   PRZEKURAT was acting under color of state law and within the course and scope of his

12   employment as an officer in the Benicia Police Department.  Defendant PRZEKURAT is sued in

13   his official and individual capacities.

14        15.    Defendant JASON EAKIN was an officer in the Benicia Police Department at all

15   times relevant hereto.  In committing the acts and omissions alleged herein, Defendant EAKIN

16   was acting under color of state law and within the course and scope of his employment as an

17   officer in the Benicia Police Department.  Defendant EAKIN is sued in his official and individual

18   capacities.

19        16.    Defendant TED CRIADO was an officer in the Benicia Police Department at all

20   times relevant hereto.  In committing the acts and omissions alleged herein, Defendant CRIADO

21   was acting under color of state law and within the course and scope of his employment as an

22   officer in the Benicia Police Department.  Defendant CRIADO is sued in his official and

23   individual capacities.

24        17.    Defendant JAKE HEINEMEYER was an officer in the Benicia Police Department

25   at all times relevant hereto.  In committing the acts and omissions alleged herein, Defendant

26   HEINEMEYER was acting under color of state law and within the course and scope of his

27   employment as an officer in the Benicia Police Department.  Defendant HEINEMEYER is sued

28   in his official and individual capacities.

[310380-7]

18.    Plaintiff KNOWLES is ignorant of the true names and capacities of defendants sued herein as DOES I through XXX, and therefore sues said defendants by such fictitious names.  Plaintiff KNOWLES is informed and believes and therefore alleges on information and belief, that each of them is responsible in some manner for the injuries and damages alleged herein.  Plaintiff KNOWLES therefore sues DOES I through XXX, by such fictitious names and will seek leave to amend this complaint to add their true names when the same have been ascertained.  DOES I through XXX are sued in their official and individual capacities.

19.    At all times mentioned herein, the Defendants named in paragraphs 5 through 18, and each of them, acted within the course and scope of their employment.

20.    At all times mentioned herein, the Defendants, and each of them, acted under color of state law.

21.    Plaintiff KNOWLES is informed and believes, and on that basis alleges, that each Defendant acted in concert with and as an agent of each other Defendant.

## FACTUAL ALLEGATIONS

22.    Commencing on or about August 2007, Plaintiff moved to the CITY OF BENICIA to attend classes at the California Maritime Academy ("CMA") in Vallejo, California, where he studied Global Studies and Maritime Affairs with a concentration on Maritime Law and Security and was elected to the position of Executive Student Body President in February 2008.

23.    While enrolled at the CMA, and at all times relevant to this action, Plaintiff was employed as Harbormaster for the Benicia Harbor Corporation, which operates the Benicia Marina.  Plaintiff also served as an intern with the United States Secret Service in 2007 and as a Security Officer for A Secure Choice Inc. from 2004 to 2006.

24.    Shortly after moving to the City of Benicia, Plaintiff became the target of Benicia Police Department scrutiny.  On numerous occasions, prior to December 23, 2007, Plaintiff observed Benicia Police Department patrol cars following him while he drove and driving past his residence.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS - CASE NO.

[310380-7]

25.     Between December 23, 2007 and May 30, 2008, after which Plaintiff moved out of the City of Benicia, the Benicia Police Department scrutiny escalated, resulting in numerous warrantless searches and arrests, as described below.

**December 23, 2007 Search and Arrest**

26.     Plaintiff is informed and believes that Defendant HARTIG alleges the following: On or about 12:06 A.M. on December 23, 2007, Defendant HARTIG was in the process of issuing a citation to an unrelated motorist.  Defendant HARTIG then observed a Jeep leave an adjacent parking lot.  Defendant HARTIG finished writing the citation to the motorist and radioed a description of the Jeep.  Defendant HARTIG then began to search for the Jeep, which was now out of sight.  Defendant HARTIG did not observe the Jeep's license plate number.  A few minutes later, Defendant HARTIG observed what he thought was the same Jeep traveling in the opposite direction.  Defendant HARTIG turned around and pursued what he only suspected was the same Jeep, but once again lost sight of it and was unable to observe a license plate number.  Acting "on a hunch" Defendant HARTIG turned onto Devonshire Road and allegedly observed a Jeep pulling into a residential garage on Stuart Court in the City of Benicia.  At no time did Defendant HARTIG turn on his siren or lights or otherwise attempt to stop the Jeep.

27.     At approximately 12:15 A.M., Plaintiff KNOWLES was inside the garage of his personal residence at 1753 Stuart Court, Benicia California 94510 ("1753 Stuart Court").  Defendant HARTIG entered the garage of Plaintiff's personal residence at 1753 Stuart Court.  Defendant HARTIG did not knock, did not announce his presence, and did not request permission to enter Plaintiff's residence.  Plaintiff is informed and believes that Defendant HARTIG did not have a warrant to arrest Plaintiff or to search his residence.

28.     Immediately upon entering Plaintiff KNOWLES' residence at 1753 Stuart Court, Defendant HARTIG placed Plaintiff in handcuffs.  Defendant HEINEMEYER, who had arrived at the location, then kicked Plaintiff's legs and pressed Plaintiff's face into the hood of Defendant HARTIG's patrol car.  Plaintiff was placed under arrest and taken to the Benicia Jail by Defendant MCFADDEN, where he was booked for driving under the influence ("DUI") and a blood sample was extracted from Plaintiff.

[310380-7]

29.     While Defendant MCFADDEN drove Plaintiff to the jail, he operated the patrol car in a reckless manner, speeding, running traffic lights and stop signs in an apparent attempt to obtain a blood sample as quickly as possible.  Defendant MCFADDEN also refused to secure Plaintiff with a seat belt in the patrol car, despite the fact that Plaintiff was secured in handcuffs, which Defendant McFadden failed to double lock causing the handcuffs to tighten.

30.     Despite being safely parked in his garage, Plaintiff's car was towed from his home and impounded.  This resulted in charges of $200.00 for towing and storage, $130.00 in vehicle release fees by the Benicia Police Department, and a $400.00 registered owner after-hours response and vehicle recovery charge.

31.     Plaintiff is informed and believes that in 2005, the City of Benicia was cited in a Solano County grand jury report for failing to promulgate a policy to determine when vehicles should be towed, and in response, then Chief of Police James E. Trimble responded that the City did not require such a policy.

32.     Plaintiff's December 23, 2007 arrest was reported in the Benicia Herald on or around January 1, 2008.

33.     On or around April 2008, Plaintiff's license was preliminarily suspended for four months by the DMV, pending his trial on the DUI charge.  The suspension lasted until August 2008.

34.     On or about September 30, 2008, the Superior Court of the State of California for Solano County held a hearing and denied Plaintiff's motion to suppress evidence obtained as a result of Defendant HARTIG's unlawful entry into Plaintiff's garage on December 23, 2007. Plaintiff plead no contest to criminal charges for DUI in order to immediately appeal the denial of the motion to suppress evidence.

35.     Plaintiff was sentenced to two days in the county jail, placed on summary probation for three years, ordered to pay a fine of $1,482.00 and administrative fees of $230.00, his driver's license was suspended, and he was ordered to enroll in the First Offender DUI program.  The Superior Court stayed the fine, fees, and sentence pending an appeal of the denial

of the motion to suppress evidence, but did not stay the requirement that Plaintiff's license be suspended and that he attend DUI classes at a cost of $594.00.

36.    On or about September 30, 2008, Plaintiff timely filed a notice of appeal of the denial of his suppression motion to the Appellate Division of the Superior Court of Solano, California.  During the pendency of this appeal, a period of over seven months, Plaintiff's license remained suspended, causing him to incur substantial costs and expenses to obtain alternative transportation.

37.    On or about April 17, 2009, the Appellate Division of the Superior Court of Solano, California, overturned Plaintiff's September 30, 2008 conviction on the grounds that Defendant HARTIG had violated Plaintiff's Fourth Amendment rights by entering into Plaintiff's residence without a warrant and without sufficient exigent circumstances to justify entry into Plaintiff's residence without a warrant.  *People of the State of California v. Knowles*, Case No. VCR200106, Opinion of the Court, April 17, 2009.  **Exhibit A** hereto.  Specifically, the Appellate Division held that "[t]he People have not shown the existence of any exigency making [the] warrantless entry reasonable.…  All evidence seized after Officer Hartig crossed the threshold of Appellant's garage is suppressed."  *Id.* at 7.  The Appellate Division remanded to the trial court for further proceedings consistent with this ruling.

38.    On May 22, 2009, on remand, the case against Plaintiff was dismissed for lack of evidence and Plaintiff's driver's license was reinstated.

39.    In total, Plaintiff incurred over $18,173.68 in legal fees to successfully defend against the criminal charges resulting from the December 23, 2007 arrest.  Additionally, Plaintiff's car insurance rates have increased dramatically as a result of the DUI charge.

40.    Plaintiff has incurred $2,956.92 in legal fees and continues to incur additional legal fees in his efforts to correct his record with the California Department of Justice and Department of Motor Vehicles to reflect that the DUI conviction was overturned.  To date, the DMV has not removed the terms of probation associated with the vacated conviction, and continues to report multiple license suspensions arising as a result of violations of certain restrictions associated with the probation (such as a lapse in insurance coverage for even a single day).  As recently as

1  August 2009, Plaintiff's license was suspended when his insurance company dropped coverage

2  due to the DMV license suspensions.  The insurance company electronically notified the DMV

3  of the lapse in coverage, causing an additional license suspension which lasted for one week.

**January 3, 2008 Traffic Stop**

5      41.      On or about January 3, 2008, Plaintiff observed a Benicia Police Department patrol

6  car parked outside his place of employment, the Benicia Marina.  Plaintiff is informed and

7  believes that this patrol car was occupied by Defendant OETTINGER.  Aware that the patrol car

8  was parked outside his place of employment, when Plaintiff later left the Marina in his car he

9  was careful to obey all traffic laws.  Nevertheless, Plaintiff was promptly pulled over by

10  Defendant OETTINGER.

11      42.      Defendant OETTINGER proceeded verbally to abuse Plaintiff and brandished his

12  firearm.  Defendant OETTINGER accused Plaintiff of reckless driving and instructed Plaintiff to

13  "leave town."  Defendant OETTINGER also threatened to arrest Plaintiff and tow his car

14  "again," indicating that Defendant OETTINGER was aware that Plaintiff had been previously

15  arrested on December 23, 2007.

16      43.      Following this unreasonable traffic stop, ominous threats and unreasonable show of

17  force; Plaintiff was released without receiving any citation.

**March 26, 2008 Surveillance**

19      44.      On or about the night of March 26, 2008, Plaintiff was walking the grounds of the

20  Benicia Marina where he was employed as Harbormaster.  Plaintiff observed a Benicia Police

21  Department vehicle following him.  Plaintiff is informed and believes that the police vehicle was

22  operated by Defendant BIDOU.

23      45.      Plaintiff entered an area of the Marina that does not permit vehicle traffic, at which

24  time Defendant BIDOU began to follow Plaintiff on foot and attempted to interrogate Plaintiff,

25  though he never asked Plaintiff to stop.  Based on Plaintiff's previous interactions with the

26  Benicia Police Department, including the threats to "leave town" on January 3, 2008, Plaintiff

27  refused to speak to Defendant BIDOU.

28

[310380-7]

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS - CASE NO.

**April 30, 2008 Warrantless Search and Arrest**

46.     On or about the night of April 30, 2008, Plaintiff was renting and residing on a boat docked in the Benicia Marina, the *Saucy Wench*.  Plaintiff was renting the *Saucy Wench* from the owner of the Marina, John Ash.  Plaintiff typically spent several nights a week on the boat.

47.     The *Saucy Wench* is a 38 foot Erickson Sailboat, which at all relevant times did not have an engine.  The cabin of the *Saucy Wench* contains a bedroom, a bathroom, a refrigerator and other appliances and was hooked to an on-shore power source.  An electronic key card was required to gain entrance to the dock area where the *Saucy Wench* and other docked watercraft were located.

48.     At around midnight, as Plaintiff walked along the sidewalk leading towards the Marina and the *Saucy Wench*, he once again observed that he was being followed by a Benicia Police Department patrol car.  However, Defendant police officers did not attempt to stop Plaintiff, who continued walking home to the *Saucy Wench*.

49.     Plaintiff entered the secure gated area where the *Saucy Wench* was docked and then continued on to the *Saucy Wench*.  Shortly after Plaintiff entered the cabin of the *Saucy Wench*, Defendants BIDOU, LAUGHTER, MENESINI, and at least two other unnamed Benicia Police Department officers appeared on the dock near the boat.

50.     Defendants BIDOU, LAUGHTER, MENESINI, and two additional officers then boarded the *Saucy Wench* and began making physical threats against Plaintiff and demanding that he exit the cabin of the boat.  Defendant officers threatened Plaintiff with a tazer and a police dog.

51.     Based on Plaintiff's prior interactions with the Benicia Police Department, including having been told to leave town, Plaintiff feared for his safety should he exit the cabin of the boat.  Accordingly, Plaintiff contacted a friend who is a police officer for another municipality by cell phone to seek advice on how to react to officers' demands.

52.     While Plaintiff was still on the phone, members of the Benicia Police Department kicked in the door to the cabin area of the *Saucy Wench*.  In kicking in the door to the cabin of the *Saucy Wench*, Defendants broke the frame of the door and the door itself.  At no time did

10

[310380-7]

Plaintiff consent to Defendants boarding or entering the cabin of the *Saucy Wench*.  Plaintiff is informed and believes that Defendants did not have a search or arrest warrant.

53.     Defendants BIDOU, MENESINI, and other Benicia Police Department officers then entered the cabin area and pointed their guns at Plaintiff.  One officer shouted "shoot him," causing Plaintiff to fear that he would be killed.

54.     The officers forced Plaintiff out of his bed and searched his person and the cabin area of the boat.  Plaintiff was held with his arms behind his back and was not free to leave the *Saucy Wench*.

55.     When Plaintiff inquired as to why he was being detained, Defendants stated that Plaintiff had run from them.  Plaintiff had at no time run from Defendants and Defendants had never attempted to detain him prior to boarding the boat.

56.     Defendant MENESINI then began to scream at Plaintiff in what Plaintiff believes was an effort to incite Plaintiff to fight Defendant MENESINI.  When Plaintiff declined to react to Defendant MENESINI's provocations and instead demanded to know why he was being detained, Defendant MENESINI repeatedly yelled "Don't be a fucking pussy!" to Plaintiff.  Defendant CHRIS BIDOU said to Plaintiff that if he moved out of Benicia, these types of interactions would cease.

57.     After completing their search, Defendant BIDOU ordered the remaining Defendants to leave the boat, and Plaintiff was released.  As Defendants left the *Saucy Wench*, Defendant BIDOU ominously instructed Plaintiff to "go back to sleep."

58.     Plaintiff was not cited or arrested in conjunction with this incident.

59.     The following morning of April 30, 2008, Plaintiff and John Ash, owner of the Benicia Harbor Corporation and the *Saucy Wench*, met with Benicia City Attorney Heather McLaughlin and City Manager Jim Erickson regarding the Benicia Police Department's actions the preceding night and on another occasion.  Despite this meeting, neither Plaintiff nor Mr. Ash has received an explanation of the Benicia Police Department's actions.  Mr. Ash sent a follow up letter recapitulating the meeting to Mr. Erickson, copied to Ms. McLaughlin, on May 12, 2008 requesting further explanation, but received no response.

11

[310380-7]

60.     As a  result of the psychological trauma associated with the events of April 30, 2008, including having multiple police officers draw their weapons on Plaintiff and shouting "shoot him!," Plaintiff has suffered from recurring nightmares and has been diagnosed with post-traumatic stress disorder ("PTSD").

**May 8, 2008 Harassment**

61.     On or about May 8, 2008, Plaintiff was riding in the passenger seat of a friend's car while waiting in the drive-thru of a Taco Bell in Benicia.  Defendant MENESINI approached the car Plaintiff was sitting in without his headlights on and sounded the siren.  Defendant MENESINI pulled his patrol car next to the car in which Plaintiff sat and proceeded to look inside the vehicle and question Plaintiff and the driver.

62.     Plaintiff is informed and believes that Defendant MENESINI did not realize that Plaintiff was in the car until Plaintiff recognized him as the same officer who had attempted to provoke a physical confrontation during the April 30, 2008 incident on the *Saucy Wench*. Plaintiff confronted Defendant MENESINI, stating that he recognized Defendant MENESINI from the April 30, 2008 incident aboard the *Saucy Wench*.  Defendant MENESINI then left the Taco Bell at a high rate of speed.

63.     Neither Plaintiff nor the driver were cited or arrested in connection with this event.

**May 30, 2008 Warrantless Search and Arrest**

64.     On or about the night of May 30, 2008, Plaintiff was at his home when he heard a loud knock on the door.  Plaintiff looked out the window of his residence and observed a group of between four and five Benicia Police officers standing at the front door, including Defendants ROSE, EAKIN, and CRIADO.  Defendant ROSE observed Plaintiff looking out the window and yelled to him to "open the door."

65.     Plaintiff feared, in light of his experience on April 30, 2008, that if he did not open the door, the officers would kick it in.  Accordingly, Plaintiff opened the front door but left the screen door closed and remained inside his residence.  The officers instructed Plaintiff to come outside.  In response, Plaintiff requested to know what was going on.

12

[310380-7]

66.     When Plaintiff inquired as to why he should come outside, Defendant ROSE opened the screen door and physically pulled Plaintiff out of his residence.  Plaintiff was then handcuffed and advised that he was being placed under arrest for "vehicle theft."  Plaintiff asked the Defendant officers whether they had a warrant for his arrest, and he was informed that they did not.

67.     After placing Plaintiff in handcuffs, Defendants began to search the residence. Plaintiff asked whether Defendants had a warrant to search his house, and was similarly advised that they did not.  At no time were Defendants given consent to search Plaintiff's residence.

68.     Defendants proceeded to search the entire condominium, though Plaintiff only rented a single bedroom.  In conducting the search, Defendants trashed the condominium dumping the contents of closets and drawers onto the floor.  Plaintiff was informed during the search that Defendants were searching for the keys to the allegedly stolen vehicle.  Defendants never searched the garage attached to the condominium and there were no vehicles on the premises.

69.     Plaintiff was then transported to the City Jail.  While detained at the City Jail, Plaintiff asked Defendant LAUGHTER what car had allegedly been stolen.  Defendant LAUGHTER replied that the allegedly stolen vehicle belonged to Plaintiff's friend, classmate, and co-worker, Charles Hendricks.  Defendant LAUGHTER further stated that at that time Mr. Hendricks was in possession of both his keys and his car.

70.     Plaintiff is informed and believes that at the conclusion of the warrantless search of Plaintiff's residence, Defendants either knew that Plaintiff was not in possession of the keys to the allegedly stolen vehicle, or that Defendants could have ascertained the location of the keys if Defendants had exercised reasonable diligence in performing their duties and not neglected to make reasonable and necessary factual investigation.  Nevertheless, Defendants continued with the invasive, unreasonable, and ultimately unsuccessful warrantless search before transporting Plaintiff to the County Jail, where Plaintiff was forced to spend the night after being booked for felony vehicle theft charges.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS - CASE NO.

[310380-7]

71.     While Plaintiff was detained in the County Jail over night, he was assaulted by an inmate and in the course of defending himself; Plaintiff sustained a fracture to his right hand, which resulted in medical expenses of $350.56, and considerable pain.

72.     Plaintiff also incurred non-refundable expenses of $2,015.00 in bail bondsman fees.  Plaintiff further incurred additional legal fees associated with preparing for a potential defense against the Vehicle Theft charges.

73.     Plaintiff's May 30, 2008 arrest for vehicle theft was reported in the Benicia Herald on June 8, 2008.

74.     The charges against Plaintiff were dropped by the Solano County District Attorney on June 4, 2008.  Plaintiff is informed and believes that the Benicia Police Department subsequently attempted to recharge Plaintiff with lesser charges stemming from this incident, which were also rejected by the District Attorney's office.  Mr. Hendricks later informed the Benicia Police Department that he did not want to pursue criminal charges related to this incident.

75.     On or about June 2008, as a result of the substantial and continued harassment experienced by Plaintiff between December 2007 and May 2008, Plaintiff was forced to move from Benicia.  Plaintiff relocated to Vallejo, California, increasing his living and commuting expenses, and now guards his address for fear that the Benicia Police Department will seek him out for further harassment.

76.     In May 2009, Plaintiff graduated from the CMA earning a Bachelor of Arts in Global Studies and Maritime Affairs with a concentration in Maritime Law and Security.

77.     Plaintiff is informed and believes that the vast majority of employment opportunities in Plaintiff's field of study at the CMA are available through United States government security agencies, which require completion of extensive background screening.  As a result of the DUI and Vehicle Theft arrest records, Plaintiff KNOWLES has been unable to secure employment in maritime and port security.  Plaintiff is currently employed as an election campaign manager and part-time Harbormaster at the Benicia Marina, which pay significantly

[310380-7]

lower wages than a maritime or port security position for which Plaintiff would otherwise be qualified for.

78.     On October 21, 2009, Plaintiff submitted a request for documents to the CITY OF BENICIA under the California Public Records Act, Cal. Govt. Code §§6250, *et. seq.*  City Attorney Heather McLaughlin responded to this request on October 28, 2009.  The response indicated that the Benicia Police Department has no policies, procedures, or training materials or curriculum regarding the circumstances under which a private citizen may be arrested without a warrant or the chain of command or supervisor approval for such arrests.

**FIRST CLAIM FOR RELIEF
42 U.S.C. § 1983
Violation of the Fourth and/or Fourteenth Amendments to the
Constitution:
Unlawful Search, Seizure, and Arrest Without Probable Cause or
Warrant on December 23, 2007
(Against Defendant HARTIG, HEINEMEYER and DOES I through
XXX in their individual and official capacities)**

For his cause of action against Defendants HARTIG, HEINEMEYER, and DOES I-XXX, Plaintiff states:

79.     Plaintiff realleges and incorporates by reference paragraphs 1 through 78 of this complaint as though fully set forth therein.

80.     As found by the Appellate Division of the Superior Court of Solano on April 17, 2009, as a result of Defendants' acts as described above at paragraphs 26 through 40, Defendants HARTIG, HEINEMEYER, and DOES I-XXX deprived Plaintiff of his clearly established right to be free from unlawful searches and seizures in his private residence, in violation of the Fourth and/or Fourteenth Amendments to the United States Constitution.  Specifically, during the course of Defendant HARTIG's entry into Plaintiff KNOWLES' private residence and subsequent arrest on December 23, 2007, Defendant HARTIG and DOES I-XXX violated Plaintiff KNOWLES' constitutionally protected rights by:

a.     Failing to obtain a search or arrest warrant to enter Plaintiff's private residence;

15

[310380-7]

  b. Making a warrantless entry into Plaintiff's private residence in the absence of exigent circumstances making such entry reasonable under the Fourth Amendment to the United States Constitution;

  c. Arresting Plaintiff in his private residence without a warrant.

81. Plaintiff KNOWLES was subjected to the deprivation of rights by Defendants HARTIG, HEINEMEYER, and DOES I-XXX, acting or pretending to act under color of state law and of statutes, or ordinances, regulations, customs and usages of the law of the United States, State of California and of the County of Solano which rights include, but are not limited to, privileges and immunities secured to Plaintiff KNOWLES by the Constitution and laws of the United States.  By reason of the acts specified herein Defendant HARTIG, HEINEMEYER, and DOES I-XXX violated the constitutional rights of Plaintiff KNOWLES, including those provided in the Fourth and Fourteenth Amendments to the U.S. Constitution.

82. As a direct and proximate result of this conduct, Plaintiff KNOWLES has suffered and will continue to suffer from psychological harm, mental distress, humiliation, embarrassment, fear, and defamation of his character and reputation and has suffered personal injury and emotional distress and incurred general damages for the deprivation of his constitutional rights.  These damages include but are not limited to costs and expenses in connection with the towing and impoundment of his car, costs of obtaining alternative transportation during the eight month period in which his license was suspended, $594.00 to attend DUI classes, $18,173.68 in legal fees in defending against criminal charges resulting from the December 23, 2007 arrest, $3,000 in ongoing legal fees to attempt to correct his DMV record, lost wages resulting from the negative impact of these criminal proceedings on his ability to obtain employment in his chosen field of study (port and harbor security), and additional special damages in the future in an amount that cannot yet be determined.

  WHEREFORE, Plaintiff KNOWLES prays for relief as set forth below.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**Violation of the Fourth and/or Fourteenth Amendments to the Constitution:**
**Unlawful Search and Seizure Without Probable Cause or Warrant on April 30, 2008**
**(Against Defendants MENESINI, BIDOU, LAUGHTER and DOES I through XXX in their individual and official capacities)**

For his cause of action against Defendants MENESINI, BIDOU, LAUGHTER, and DOES I-XXX, Plaintiff states:

83.    Plaintiff realleges and incorporates by reference paragraphs 1 through 82 of this complaint as though fully set forth therein.

84.    On April 30, 2008, as described above at paragraphs 46 through 60, Defendants deprived Plaintiff of his clearly established right to be free from unlawful searches and seizures in his private residence, in violation of the Fourth and/or Fourteenth Amendments to the United States Constitution.  Specifically, during the course of Defendants' entry into Plaintiff KNOWLES' private residence aboard the *Saucy Wench* on April 30, 2008, Defendants violated Plaintiff KNOWLES' constitutionally protected rights by:

       a.    Failing to obtain a search warrant to enter Plaintiff's private residence;

       b.    Making a warrantless entry and search of Plaintiff's private residence in the absence of exigent circumstances making such entry reasonable under the Fourth Amendment to the United States Constitution;

       c.    Using unreasonable force in kicking in the door to the cabin aboard the *Saucy Wench* and threatening Plaintiff with deadly force.

85.    Plaintiff KNOWLES was subjected to the deprivation of rights by these Defendants MENESINI, BIDOU, LAUGHTER and DOES I through XXX, acting or pretending to act under color of state law and of statutes, or ordinances, regulations, customs and usages of the law of the United States, State of California and of the County of Solano which rights include, but are not limited to, privileges and immunities secured to Plaintiff KNOWLES by the Constitution and laws of the United States.  By reason of the acts specified herein these

17

[310380-7]

Defendants have violated the constitutional rights of Plaintiff KNOWLES, including those provided in the Fourth and Fourteenth Amendments to the U.S. Constitution.

86.     As a direct and proximate result of the conduct of these Defendants, Plaintiff KNOWLES has suffered and will continue to suffer from psychological harm, mental distress, humiliation, embarrassment, fear, and defamation of his character and reputation and has suffered personal injury and emotional distress and incurred general damages for the deprivation of his constitutional rights.

WHEREFORE, Plaintiff KNOWLES prays for relief as set forth below.

**THIRD CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**Violation of the Fourth and/or Fourteenth Amendments to the Constitution:**
**False Arrest without Probable Cause or Warrant on April 30, 2008**
**(Against Defendants MENESINI, BIDOU, LAUGHTER and**
**DOES I through XXX in their individual and official capacities)**

For his cause of action against Defendants MENESINI, BIDOU, LAUGHTER, and DOES I through XXX, Plaintiff states:

87.     Plaintiff realleges and incorporates by reference paragraphs 1 through 86 of this complaint as though fully set forth therein.

88.     On April 30, 2008, as described above at paragraphs 46 through 60, Defendants deprived Plaintiff of his clearly established right to be free from unlawful arrest without probable cause or a warrant, in violation of the Fourth and/or Fourteenth Amendments to the United States Constitution.  Specifically, during the course of Defendant's entry into Plaintiff KNOWLES' private residence aboard the *Saucy Wench* on April 30, 2008, Defendants violated Plaintiff KNOWLES' constitutionally protected rights by:

  a.     Unlawfully detaining Plaintiff at gunpoint and physically restraining Plaintiff in his private residence aboard the *Saucy Wench*, without probable cause or a search warrant and in the absence of exigent circumstances making such detention reasonable under the Fourth Amendment to the United States Constitution;

18

[310380-7]

1          b.    Threatening Plaintiff with unnecessary force.

2         89.    Plaintiff KNOWLES was subjected to the deprivation of rights by these

3    Defendants MENESINI, BIDOU, LAUGHTER and DOES I through XXX, acting or pretending

4    to act under color of state law and of statutes, or ordinances, regulations, customs and usages of

5    the law of the United States, State of California and of the County of Solano which rights

6    include, but are not limited to, privileges and immunities secured to Plaintiff KNOWLES by the

7    Constitution and laws of the United States.  By reason of the acts specified herein these

8    Defendants have violated the constitutional rights of Plaintiff KNOWLES, including those

9    provided in the Fourth and Fourteenth Amendments to the U.S. Constitution.

10         90.    As a direct and proximate result of the conduct of these Defendants, Plaintiff

11    KNOWLES has suffered and will continue to suffer from psychological harm, mental distress,

12    humiliation, embarrassment, fear, and defamation of his character and reputation and has

13    suffered personal injury and emotional distress and incurred general damages for the deprivation

14    of his constitutional rights.

15        WHEREFORE, Plaintiff KNOWLES prays for relief as set forth below.

16
17                **FOURTH CLAIM FOR RELIEF**
            **42 U.S.C. § 1983**
18    **Violation of the Fourth and/or Fourteenth Amendments to the Constitution:**
19    **Unlawful Search, Seizure and Arrest Without Probable Cause or Warrant on May 30, 2008**
20    **(Against Defendants PRZEKURAT, ROSE, EAKIN, CRIADO, and DOES I through XXX in their individual and official capacities)**

21        For his cause of action against Defendants PRZEKURAT, ROSE, EAKIN, CRIADO, and

22    DOES I through XXX, Plaintiff states:

23         91.    Plaintiff realleges and incorporates by reference paragraphs 1 through 90 of this

24    complaint as though fully set forth therein.

25         92.    On May 30, 2008, as described above at paragraphs 64 through 74, Defendants

26    deprived Plaintiff of his clearly established right to be free from unlawful searches, seizures and

27    arrest in his private residence, in violation of the Fourth and/or Fourteenth Amendments to the

28

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS - CASE NO.

[310380-7]

United States Constitution.  Specifically, Defendants ROSE, EAKIN, CRIADO, PRZEKURAT, and DOES I through XXX violated Plaintiff KNOWLES' constitutionally protected rights by:

      a.    Failing to obtain a search or arrest warrant to enter Plaintiff's private residence;

      b.    Making a warrantless entry into Plaintiff's private residence in the absence of exigent circumstances making such entry reasonable under the Fourth Amendment to the United States Constitution;

      c.    Conducting a destructive search of Plaintiff's residence; and

      d.    Arresting Plaintiff in his residence without a warrant and without exigent circumstances justifying such a warrantless arrest.

93.    Defendants deprived Plaintiff of his clearly established right to be free from unlawful searches, seizures, and arrest in his private residence, in violation of the Fourth and/or Fourteenth Amendments to the United States Constitution.  Specifically, the investigation conducted by the Defendants and their actions taken thereon were taken in bad faith or, in the alternative, negligently, and Plaintiff was damaged by reason thereof in at least the following respects:

      a.    Loss of personal freedom;

      b.    Payments necessary for bond and expenses of defense, including attorneys' fees;

      c.    Pain and suffering, both physical and emotional; and

      d.    Loss of reputation in the community of Benicia, California and in Solano County, California.

94.    Plaintiff KNOWLES was subjected to the deprivation of rights by these Defendants, acting or pretending to act under color of state law and of statutes, or ordinances, regulations, customs and usages of the law of the United States, State of California and of the County of Solano which rights include, but are not limited to, privileges and immunities secured to Plaintiff KNOWLES by the Constitution and laws of the United States.  By reason of the acts

[310380-7]

specified herein Defendants violated the constitutional rights of Plaintiff KNOWLES, including those provided in the Fourth and Fourteenth Amendments to the U.S. Constitution.

95.    As a proximate result of the conduct of these Defendants, Plaintiff KNOWLES has suffered and will continue to suffer from psychological harm, mental distress, humiliation, embarrassment, fear, and defamation of his character and reputation and has suffered personal injury and emotional distress and incurred general damages for the deprivation of his constitutional rights, including but not limited to attorney's fees, medical expenses, and non-refundable bail bondsman expenses.

WHEREFORE, Plaintiff KNOWLES prays for relief as set forth below.

**FIFTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**Violation of the First Amendment to the Constitution:**
**Right to Access the Courts**
**(Against Defendants SPAGNOLI, ERICKSON, HARTIG,**
**OETTINGER, BIDOU, PRZEKURAT, MCFADDEN, MENISINI,**
**LAUGHTER, ROSE, EAKIN, CRIADO, HEINEMEYER, and**
**DOES I through XXX in their individual and official capacities)**

For his cause of action against Defendants SPAGNOLI, ERICKSON, HARTIG, OETTINGER, BIDOU, PRZEKURAT, MCFADDEN, MENISINI, LAUGHTER, ROSE, EAKIN, CRIADO, HEINEMEYER, and DOES I through XXX, Plaintiff states:

96.    Plaintiff realleges and incorporates by reference paragraphs 1 through 95 of this complaint as though fully set forth therein.

97.    Plaintiff is informed and believes, and on that basis alleges, that many of Defendants acts following December 23, 2007 such as those described at paragraphs 41 through 74, were in retaliation for Plaintiff KNOWLES' attempts to avail himself of his clearly established First Amendment rights, including to access the courts by defending against the DUI charges arising from the December 23, 2007 arrest and protesting to the City Manager and City Attorney of Benicia the unlawful search and seizure on April 30, 2008.

98.    As a proximate result of the conduct of Defendants, Plaintiff KNOWLES suffered personal injury and emotional distress and incurred general damages for the deprivation of his constitutional rights.

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS - CASE NO.

[310380-7]

WHEREFORE, Plaintiff KNOWLES prays for relief as set forth below.

**SIXTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**Violation of the Fourth and/or Fourteenth Amendments to the Constitution:**
**Right to be Free from Police Harassment and Intimidation**
**(Against Defendants SPAGNOLI, ERICKSON, HARTIG, OETTINGER, BIDOU, PRZEKURAT, MCFADDEN, MENISINI, LAUGHTER, ROSE, EAKIN, CRIADO, HEINEMEYER, and DOES I through XXX in their individual and official capacities)**

For his cause of action against Defendants SPAGNOLI, ERICKSON, HARTIG, OETTINGER, BIDOU, PRZEKURAT, MCFADDEN, MENISINI, LAUGHTER, ROSE, EAKIN, CRIADO, HEINEMEYER, and DOES I through XXX, Plaintiff states:

99.    Plaintiff realleges and incorporates by reference paragraphs 1 through 98 of this complaint as though fully set forth therein.

100.    Plaintiff is informed and believes that Defendants acted together to violate the Fourth Amendment and other civil rights of the Plaintiff by subjecting him to repeated surveillance, searches, seizures, and arrests.

101.    Defendants deprived Plaintiff of his clearly established right to be free from police harassment, in violation of the Fourth and/or Fourteenth Amendments to the United States Constitution.

102.    Plaintiff KNOWLES was subjected to the deprivation of these rights by Defendants SPAGNOLI, ERICKSON, HARTIG, OETTINGER, BIDOU, PRZEKURAT, MCFADDEN, MENISINI, LAUGHTER, ROSE, EAKIN, CRIADO, HEINEMEYER, and DOES I through XXX, acting or pretending to act under color of state law and of statutes, or ordinances, regulations, customs and usages of the law of the United States, State of California and of the County of Solano which rights include, but are not limited to, privileges and immunities secured to Plaintiff KNOWLES by the Constitution and laws of the United States. By reason of the acts specified herein these Defendants have violated the constitutional rights of Plaintiff KNOWLES, including those provided in the Fourth and Fourteenth Amendments to the U.S. Constitution.

[310380-7]

103.   As a proximate result of the conduct of these Defendants, Plaintiff KNOWLES has suffered and will continue to suffer from psychological harm, mental distress, humiliation, embarrassment, fear, and defamation of his character and reputation and has suffered personal injury and emotional distress and incurred general damages for the deprivation of his constitutional rights, including those damages plead in paragraphs 82, 86, 90, 95, and 98 above.

WHEREFORE, Plaintiff KNOWLES prays for relief as set forth below.

## SEVENTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983
### Violation of the First, Fourth, and/or Fourteenth Amendments to the Constitution:
### Failure to Supervise and Train Adequately Benicia Police Department Officers
### (Against Defendants CITY OF BENICIA, SPAGNOLI, ERICKSON and DOES I through XXX in their official capacities)
### (*Monell* Claim)

104.   Plaintiff realleges and incorporates by reference paragraphs 1 through 103, and especially paragraphs 31, 59, and 78, as though fully set forth herein.  The allegations contained in paragraphs 105 through 106 below will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

105.   Defendants CITY OF BENICIA, SPAGNOLI, ERICKSON, and DOES I through XXX, under color of law, intentionally, negligently, and with complete and deliberate indifference to Plaintiff's rights, proximately caused Plaintiff to be deprived of his constitutional rights including but not limited to the First, Fourth, and Fourteenth amendments, by:

      a.   Failure properly to supervise the training and conduct of Defendant Police Officers despite constructive or actual knowledge of unlawful actions by Defendant Police Officers;

      b.   Failure to appoint, promote, train, supervise and discipline Defendant Police Officers who enforce the laws in effect in the City of Benicia and who would protect the constitutional rights of the people of the City of Benicia;

      c.   Failure properly and adequately to train the officers in the Benicia Police Department in investigative techniques and procedures;

23

[310380-7]

   d.   Failure to enforce the provisions of the Constitution of the United States concerning the warrantless search, seizure, and arrest of citizens in their private residence;

   e.   Maintaining a policy and custom of harassing certain residents of the City of Benicia by subjecting them to warrantless searches, seizures, and arrests and failing to address this failure despite being informed of such policy and custom; and

   f.   Failing to issue any policy whatsoever, or issuing vague, confusing, and contradictory policies, concerning the warrantless search, seizure, and arrest of citizens in their private residence, inconsistent with the requirements of the fourth, and Fourteenth Amendments of the United States Constitution.

   g.   Condoning the open and notorious systematic harassment of Plaintiff in violation of his rights under the Constitution of the United States.

   106.   As a proximate result of the conduct of these Defendants, Plaintiff KNOWLES has suffered and will continue to suffer from psychological harm, mental distress, humiliation, embarrassment, fear, and defamation of his character and reputation and has suffered personal injury and emotional distress and incurred general damages for the deprivation of his constitutional rights including those damages pled in paragraphs 82, 86, 90, 95, and 98 above.

   WHEREFORE, Plaintiff KNOWLES prays for relief as set forth below.

## PRAYER FOR RELIEF

   Wherefore, Plaintiff KNOWLES prays for judgment against Defendants as follows:

   1.   For compensatory damages in an amount according to proof;

   2.   For punitive damages against individual defendants only, in amounts according to proof;

   3.   For reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and as otherwise authorized by statute or law;

   4.   For costs of suit;

   5.   Declaratory and injunctive relief; and

6.      For such other and further relief as the court deems just and proper.

Dated:  December 16, 2009                              Respectfully submitted,

                                                       ROSEN, BIEN & GALVAN, LLP

                                                       By:   */s/ Sanford Jay Rosen*
                                                             SANFORD JAY ROSEN
                                                             Attorneys for Plaintiff
                                                             PETER KNOWLES

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial.

Dated:  December 16, 2009                              Respectfully submitted,

                                                       ROSEN, BIEN & GALVAN, LLP

                                                       By:   */s/ Sanford Jay Rosen*
                                                             SANFORD JAY ROSEN
                                                             Attorneys for Plaintiff
                                                             PETER KNOWLES

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS - CASE NO.

[310380-7]

EXHIBIT A

ENDORSED FILED

Clerk of the Superior Court

APR 1 7 2009

By _Kevin Taylor_
DEPUTY CLERK

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SOLANO

APPELLATE DIVISION

| | |
|---|---|
| PEOPLE OF THE STATE OF ) <br> CALIFORNIA, ) <br> ) <br> Plaintiff and Respondent ) <br> ) <br> ) <br> vs. ) <br> ) <br> PETER KNOWLES, ) <br> ) <br> Defendant and Appellant.) <br> ) <br> _____ ) | CASE NO. VCR200106 <br> Lower Court Case No. VCR195521 <br><br> OPINION OF THE COURT |

    The State charged Appellant Peter Knowles with violating Vehicle Code §23109(a) (speed contest) and §§23152a&(b) (driving under the influence of alcohol or drugs). Appellant moved to suppress the evidence. Following a denial of his motion, Appellant pled guilty to §23152(a), filing a timely notice of appeal of the denial of his suppression motion the same day.

Facts

    Just after midnight on December 23, 2007, Officer Frank Hartig stood in the parking lot of a gas station writing a citation when the sound of a revving engine and tires breaking traction drew his attention. He observed the offending vehicle to be a red Jeep and watched it accelerate away. As it went past him, the vehicle slowed a bit.

1

He looked at the driver and the driver "kind of" looked his way. Then the vehicle accelerated to an estimated 60mph onto a stretch of road posted 35mph. Officer Hartig then radioed a description of the Jeep to dispatch, finished his citation and drove off to find the Jeep, which was out of sight. Hartig searched for it, driving along Military and South Hampton Road, but without seeing it. In the area of West 7th and South Hampton, Hartig spotted what he believed was the Jeep coming in the opposite direction. He looked at the Jeep, but could not see inside it. Officer Hartig assumed the driver saw him and accelerated away at perhaps just over 35 mph. Officer Hartig broadcast his sighting to other police units in the direction the Jeep was traveling. As soon as he was able, Hartig turned around and tried to catch up to the Jeep. The other police radioed that they saw nothing. Officer Hartig assumed that the Jeep had turned onto a side road off South Hampton. He turned onto Devonshire, and in his words: "I took a hunch and went down the first court, and that's when I observed tail lights pulling into a residence on Stuart Court." The Jeep had entered a residential garage.

Officer Hartig parked his vehicle, ran into the garage where he pulled the driver out of the Jeep, handcuffed him, and walked him out of the garage and back to his police vehicle. After arresting Appellant, Officer Hartig smelled alcohol. A later blood alcohol test confirmed a blood alcohol level in excess of the legal limit of .08%. No signs of intoxication were observed while Appellant was driving.

Issues

1.   Did the trial court commit procedural error in allowing the prosecution to argue an additional justification to the warrantless entry to that proffered in its written opposition to Appellant's motion to suppress?

2.   Did the trial court commit substantive error in finding the warrantless entry lawful?

Discussion

Section 1538.5 procedure.

The People, in its written opposition to Appellant's motion to suppress, argued that the officer found Appellant "parked in the driveway" and was "detained" based

2

1  upon a reasonable suspicion that the driver had had committed a Vehicle Code
2  offense, a traffic violation.   The People did not address the correct location of the car
3  (in the garage) nor any justification of the warrantless entry into the garage based
4  upon evasion, hot pursuit, or any other theory.

5  At the hearing, the trial court, sua sponte, mentioned the theory of "fresh
6  pursuit" and put the matter over for further briefing on both "fresh pursuit" and
7  "exigency."

8  In *People v Williams* (1999) 20 C4th 119, the California Supreme Court held
9  that when defendants move to suppress evidence, they "... must set forth the factual
10  and legal bases for the motion, but they satisfy that obligation, at least in the first
11  instance, by making a prima facie showing that the police acted without a warrant. The
12  prosecution then has the burden of proving some justification for the warrantless
13  search or seizure, after which, defendants can respond by pointing out any
14  inadequacies in that justification. Defendants who do not give the prosecution
15  sufficient notice of these inadequacies cannot raise the issue on appeal. "[T]he scope
16  of issues upon review must be limited to those raised during argument . . . . This is an
17  elemental matter of fairness in giving each of the parties an opportunity adequately to
18  litigate the facts and inferences relating to the adverse party's contentions." (at 136.)
19  (Citing *Wilder v Superior* Court (1979) 92 CA3d 90 and *People v. Manning* (1973) 33
20  Cal. App. 3d 586.

21  What is required is that the parties receive a full hearing on the merits of the
22  motion.  Suppression motions are decided on the evidence presented and not on the
23  pleadings.  Although it was the court that raised the possible justifications of hot
24  pursuit and/or exigency, there is no rule prohibiting a court from doing so.  Appellant
25  received a full evidentiary hearing and was allowed to fully argue all raised issues.
26  There was no procedural error.

27
28

A review of a trial court's ruling on a motion to suppress is governed by well-

settled principles. In ruling on such a motion, the trial court (1) finds the historical facts, (2) selects the applicable rule of law, and (3) applies the latter to the former to determine whether the rule of law as applied to the established facts is or is not violated. The trial court's resolution of each of these inquiries is subject to appellate review. The court's resolution of the first inquiry, which involves questions of fact, is reviewed under the deferential substantial-evidence standard. Its decision on the second, *which is a pure question of law, is scrutinized under the standard of independent review.* Finally, its ruling on the third, which is a mixed fact-law question that is predominantly one of law, is also subject to independent review. *People v. Ayala* (2000) 23 Cal.4[th] 225, 255.

The facts: In concluding that police entry into the Appellant's garage[1] without a warrant was legally justified, the trial court found that Officer Hartig witnessed an instance of speeding that could have been reckless driving or an exhibition of speed. The trial court further found that Officer Hartig believed that Appellant was attempting to avoid him. Evidence in the record supports the finding that Officer Hartig witnessed a vehicle code violation.

However, the record does not support an objective finding that Appellant was attempting to flee from or evade Officer Hartig. The record contains only the officer's subjective impressions--that Appellant "kind of looked" in his direction and that he looked at the driver, could not see into the vehicle, and assumed Appellant saw him. The record contains no evidence that Appellant even knew police were looking for his Jeep,[2] but only describes Officer Hartig's quest for the Jeep up and down various

---

[1] No one takes issue with here with a warrantless entry into a garage rather than a house. The Supreme Court long ago extended the Fourth Amendment's protection to garages. *Taylor v. United States*, 286 U.S. 1, 6 (1932). "We can conceive of no reason to distinguish a garage, where people spend time, work, and store their possessions, from a den or a kitchen, where people spend time, work, and store their possessions. Simply put, a person's garage is as much a part of his castle as the rest of his home." *U.S. v. Oaxaca*, 233 F.3[rd] 1154, 1157 (9th Cir.2000).

[2] Hartig used the term of art, "evade", which has a technical meaning in the Vehicle Code. §2800.1 says:

4

streets. Though the record is not specific as to time, the description of Officer Hartig's search suggests a substantial lapse in time. The one time Officer Hartig encountered the moving Jeep, it was going the other direction, and there was never any opportunity to try to stop the Appellant as he was driving. The trial court's finding that Appellant was evading police is based solely on the officer's subjective belief, and is not supported by objective evidence. The subjective beliefs of police are immaterial in determining probable cause. *People v. Limon* (1993) 17 Cal.App.4th 524, 539.

The law: The Fourth Amendment prohibits a warrantless entry into a suspect's home to make an arrest absent consent or exigent circumstances. *People v Ramey* (1976) 16 C3d 263. "The presumption of unreasonableness that attaches to a warrantless entry into the home can be overcome by a showing of one of the few specifically established and well-delineated exceptions to the warrant requirement [citation], such as "hot pursuit of a fleeing felon, or imminent destruction of evidence, . . . or the need to prevent a suspect's escape, or the risk of danger to the police or to other persons inside or outside the dwelling" [citation]." *People v. Thompson* (2006) 38 Cal.4th 811, 817-818.

The trial court ruled as followed:

> "I think even the speeding is a factor that the officer can consider in deciding whether the defendant's vehicle was reckless driving, and that as he pursued and tried to locate the defendant, his behavior was reasonable, once he saw the vehicle that, in his mind, fled him, had pulled into the garage, the officer can go in for the purposes of investigating a reckless driving or an exhibition of speed. The officer can go in, identify the defendant and investigate, and it's at that point that he noticed symptoms of alcohol intoxication, et cetera, and also began a DUI investigation. The Court finds the entry into the garage and into the vehicle appropriate. The Court will deny the motion to suppress."

While not explicit as to the rule of law being applied, it can be inferred that the court

---

Any person who, while operating a motor vehicle and with the intent to evade, willfully flees or otherwise attempts to elude a pursuing peace officer's motor vehicle, is guilty of a misdemeanor if all of the following conditions exist:

(a) The peace officer's motor vehicle is exhibiting at least one lighted red lamp visible from the front and the person either sees or reasonably should have seen the lamp.

(b) The peace officer's motor vehicle is sounding a siren as may be reasonably necessary.

(c) The peace officer's motor vehicle is distinctively marked.

relied upon the "hot pursuit." A type of exigent circumstances has been recognized where an arrest or detention based on probable cause has begun in a public place, "but the suspect retreats into a private place in an attempt to thwart the arrest." *People v. Lloyd* (1989) 216 Cal.App.3ʳᵈ 1425, 1428. In *Lloyd* the defendant's refusal to comply with lawful detention for traffic violations justified "hot pursuit" into house to prevent defendant from frustrating arrest. The Court permitted the intrusion "to prevent the suspect from frustrating the arrest which had been set in motion in a public place," finding that it constituted a proper exception to the warrant requirement. *Lloyd*, at 1429. "The hot pursuit exception to the warrant requirement only applies when officers are in 'immediate' and 'continuous' pursuit of a suspect from the scene of the crime. [Citations.] In addition, the critical time for determining whether any exigency exists is the moment the officer makes the warrantless entry." *U.S. v. Johnson*, 256 F.3ʳᵈ 895, 907 (9ᵗʰ Cir. 2001). In analyzing this issue, a reviewing court must keep in mind that, "as with all exceptions to the warrant requirement, the courts must ever be on their guard to keep the 'hot pursuit' justification within firm and narrow bounds: 'the exception must not be permitted to swallow the rule' [citation]." *People v. Escudero* (1979) 23 Cal.3ʳᵈ 800, 811.

This is not a case of hot pursuit. Police never actually followed the Jeep. Emergency lights were never activated. There is no evidence that Appellant knew an officer was even looking for him. There was only a hunt and a find on a hunch by a law officer with good instincts. Appellant did not resist a prior attempt to detain him. Appellant did not retreat into his house in an effort to avoid arrest. Appellant was not a fleeing felon. The officer's interest in entering the garage was to arrest Appellant for a traffic violation. Appellant had already arrived home and presented no threat to public safety. Nor was there further chance for escape.

Nor can destruction or disappearance of evidence provide an exigent justification for the warrantless search. The danger that evidence will dissipate over time in DUI cases is a real concern. However, at the time Officer Hartig entered into the residence and arrested Appellant, he was unaware of any use of alcohol. He had no probable cause to believe that Appellant had engaged in a DUI offense; indeed, his

---

(d) The peace officer's motor vehicle is operated by a peace officer, … and that peace officer is wearing a distinctive uniform.

only belief was that Appellant had committed the traffic violations of breaking traction, exhibiting speed, and perhaps driving recklessly, for which there was no evidence to be lost. It was only after the warrantless entry and arrest that Officer Hartig discovered *objective signs* of intoxication.

A warrantless entry into a residence is presumptively unreasonable under the Fourth Amendment. The People have not shown the existence of any exigency making such warrantless entry reasonable. The motion to suppress should have been granted. All evidence seized after Officer Hartig crossed the threshold of Appellant's garage is suppressed. The matter is remanded to the trial court for further proceedings consistent with this ruling.

Date: April 6, 2009

_____
CYNDA RIGGINS UNGER,
PRESIDING JUDGE OF THE APPELLATE DIVISION OF
THE SUPERIOR COURT

We agree:

_____
SCOTT L. KAYS,
JUDGE OF THE SUPERIOR COURT

_____
PETER B. FOOR,
JUDGE OF THE SUPERIOR COURT

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SOLANO
### Case No.VCR200106

# CERTIFICATE OF MAILING

I, the undersigned, certify under penalty of perjury that I am a Deputy clerk for the above-entitled Court and not a party to the within action; that I am familiar with the County of Solano's procedure for collection and processing of correspondence for mailing with the United States Postal Service. This document will be deposited with the United States Postal Service on the same day as the execution of this document in the ordinary course of business. This document was sealed and placed for collection and mailing on the same day as the execution of this document at the address given for deposit in the United States Postal Service and following ordinary business practices. Said envelope was addressed to the attorneys for the parties, or the parties, as shown below:

Document mailed: **OPINION OF THE COURT**

Supervising En Banc Appeal Judge
Cynda R. Unger
(Via Inter-office mail)


Judge Scott L. Kays
(via Inter-office mail)


Judge Peter B. Foor
(via Inter-office mail)

Thomas Gill
Attorney At Law
300 Tuolumne Street
Vallejo, Ca 94590

District Attorney
Attention: Susanne Mathews
321 Tuolumne Street
Vallejo, Ca 94590
(Via Inter-Office Mail)

Peter Knowles
1753 Stuart Court
Benicia, Ca 94510

DATED: April 20, 2009


BRIAN K. TAYLOR, Clerk of the Court

By: _____
     K. Taylor, En Banc Appeal Clerk